**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | **CRIMINAL ACTION** |
| | ) | |
| **v.** | ) | **NO. 12-CR-1-6-DJP-MBN** |
| | ) | |
| | ) | |
| | ) | **DIVISION P** |
| | ) | |
| **TELLY HANKTON** | ) | |

**SUPPLEMENTAL MEMORANDUM IN**
**SUPPORT OF MOTION FOR PRODUCTION**

**NOW INTO COURT**, through counsel, comes defendant Telly Hankton, who submits this supplemental memorandum in support of his motion for production of the Government's file.

Relevant Procedural History

Following appeal, Telly Hankton stands convicted of federal racketeering, conspiracy to distribute controlled substances, murdering Darvin Bessie in aid of racketeering, murdering Darnell Stewart in aid of racketeering, and murdering Jesse Reed in aid of racketeering. *United States v. Hankton,* 51 F.4th 578, 614 (5th Cir. 2022). Mr. Hankton has until February 21, 2024, to file a motion to vacate pursuant to 28 U.S.C.§ 2255.

On September 12, 2023, counsel requested production of the Government's file via electronic mail, and on October 2, 2023, the Government responded that it

would not produce its file, prompting Mr. Hankton to file a motion and memorandum for production. R. Doc. 2330.

Mr. Hankton was represented by government-appointed counsel at trial and on appeal and undersigned counsel requested a copy of the files maintained by prior counsel. In September of 2023, lead trial counsel informed that "Mr. Hankton's [file] is not readily available but I'm sure whatever you need can be attained from Pacer." Counsel has since obtained an electronic file maintained by trial co-counsel that is incomplete and disorganized.

Following a phone conference on January 19, 2024, this Court ordered supplemental briefing on whether Mr. Hankton has the right to seek discovery prior to filing a 2255 motion to vacate.

Law and Argument

In a 2255 motion, Mr. Hankton has the right to present new evidence in support of his innocence, challenge the effectiveness of both his trial and appellate counsel, and challenge whether the Government failed to comply with its obligations

under *Brady v. Maryland*[1] and its progeny.[2]  While the Supreme Court has found that the Government does not have a continuing *Brady* obligation after conviction,[3] whether the Government complied with its obligations under *Brady* is a cognizable claim on collateral review, just as is whether any post-conviction process satisfies the due process requirement to provide an adequate opportunity for review.

There are multiple instances of pre-conviction litigation alleging *Brady* violations in this case. For example, on September 30, 2015, trial counsel filed an extensive motion to compel discovery after learning that Detective Pratt had falsified evidence in the Jesse Reed investigation. R. Doc. 1111. In ruling on this motion, the Magistrate ordered the Government to "expeditiously" disclose any *Brady* material relevant in its review of the Civil Rights Division Investigation materials. R. Doc. 1175, p. 45. Then, in the middle of trial, on  June 16, 2016, trial counsel filed a motion for motion for miscellaneous relief, alleging the Government had committed multiple *Brady* violations. R. Doc. 1552. In ruling on this motion, the district court

---

[1] The Government has a duty to disclose all material evidence favorable to a criminal defendant. *Brady v. Maryland*, 373 U.S. 83, 87 (1963).

[2] *See Giglio v. United States,* 405 U.S. 150, 154 (1972) (holding the Government's "duty to disclose is not limited to 'exculpatory' information, it also includes information that could be used to impeach government witnesses[.]"); 18 U.S.C. § 3500, also known as the Jencks Act, the Government must produce "any statement . . . of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified" after the witness has testified on direct examination. 18 U.S.C. § 3500(a), (e).

[3] *District Attorney's Office for Third Judicial District v. Osborne*, 557 U.S. 52 (2009).

agreed that the Government had failed to timely disclose some impeachment evidence,[4] while it remained unclear[5] whether further *Brady* violations had occurred. Following conviction, Mr. Hankton moved for a new trial based in part on the Government's repeated failure to comply with its *Brady* obligations. R. Doc. 1636

The only way to evaluate whether the Government failed to comply with the court's pre-conviction orders to produce specific *Brady* evidence requires that the Government produce relevant portions of its file for review prior to the filing of Mr. Hankton's 2255 motion.

In *United States v. Cuya,* 964 F.3d 969, 972 (11th Cir. 2020), the Eleventh Circuit held that a "prisoner is not entitled to file a motion for discovery – of transcripts, indictments, search warrants, or other records – before filing a § 2255 motion to vacate." The *Cuya* court relied upon several cases from the Fifth Circuit that denied relief to individuals who sought copies of transcripts and trial documents "at Government expense for the purpose of searching the record for possible error[.]" *Walker v. United States,* 424 F.2d 278, 279 (5th Cir. 1970). The *Cuya* court further noted that the petitioner's claim was essentially mooted once the Government

---

[4] Specifically, the court found the Government failed to produce a recorded conversation between witness Cherisse Gibson and her brother to Mr. Hankton's defense attorneys and failed to timely produce copies of Washington MacCaskill's letters to the Government. R. Doc. 1558, pp. 4, 6.

[5] The court noted it was unclear whether the Government failed to provide grand jury testimony or an FBI interview of Michael Anderson, but "remind[ed] the government of its obligation to turn over any and all relevant Jencks material in this case and orders it to do so immediately." R. Doc. 1558, p. 8.

provided Mr. Cuya with the records sought following the filing of his 2255 petition. *Cuya,* 946 F.3d at 970.

In contrast to *Cuya,* and the cases upon which it relies, Mr. Hankton is not a *pro se* litigant seeking copies of transcripts and other publicly available material at the Government's expense. Rather, Mr. Hankton seeks specific items from the Government believed to contain exculpatory or impeaching evidence which were either not disclosed in advance of trial or not maintained by Mr. Hankton's government-appointed counsel. The ability to assess the substance of any *Brady* violation, as well as the adequacy of trial and appellate counsel's representation, is impossible without access to these portions of the Government's file.

Given that Mr. Hankton's government-appointed counsel did not maintain a complete file and has not kept a record of documents as they were received, stored, or deleted, Mr. Hankton has no other option than to seek this information directly from the Government. Furthermr the approaching deadline is February 21, 2024, Mr. Hankton is unable to simply request and obtain these records through the Freedom of Information Act.

<u>Specific Information Requested</u>

Mr. Hankton again moves for all evidence obtained by the Government prior to trial that was material to his guilt or to the credibility of any witness who was called to testify. In particular, Mr. Hankton renews his request for the following

items discussed herein.

1. <u>The Government's entire file as it relates to former NOPD Officer Desmond Pratt.</u>

Desmond Pratt was the lead investigator for the Jesse Reed murder. It is undisputed that Pratt manufactured false witness statements from Donald Reed and Tyronne Calloway to implicate Telly Hankton and Edward Allen as the perpetrators of the Reed murder. It is further undisputed that Pratt had a relationship with Hassan Williams, whose recorded statement and grand jury testimony were the only pieces of evidence implicating Mr. Hankton in the Reed murder. Given Pratt's documented history of offering Donald Reed money and guns to implicate Mr. Hankton in the Reed murder, it is within the realm of possibilities that Pratt also exerted similar influence over Hassan Williams.

In 2013, Pratt was charged in State court with aggravated incest, sexual battery, and carnal knowledge of a juvenile, and pled guilty in 2014 to two counts of sexual battery and one count of felony carnal knowledge and was sentenced to three years at hard labor. *State v. Pratt,* Orleans Parish Docket Number 517-077. At the time of Mr. Hankton's trial in 2016, Pratt was the subject of a Civil Rights Investigation conducted by the Department of Justice, and when called to testify asserted his Fifth Amendment privilege to questions such as "Did you pay witnesses to implicate Telly Hankton for the murder of Jesse Reed?" and "Did you frame Telly Hankton for the murder of Jesse Reed?" <u>ROA.13178</u>.

Prior to trial, Mr. Hankton's counsel filed an extensive motion to compel discovery pertaining to Pratt's involvement in the Reed case, and any other related investigation, as well as the findings and reports from the DOJ investigation. R. Doc. 1111. On November 17, 2015, Magistrate North ruled that the Government had a duty to "expeditiously investigate" whether the DOJ investigation had uncovered potentially exculpatory information and "if so, to produce such information." R. Doc. 1175, p. 7. From a review of counsel's file and pleadings, it appears the Government did not disclose the scope, findings, and conclusions of the DOJ investigation into Pratt. It is therefore impossible to know whether the Government complied with the Magistrate's pretrial order to disclose information learned during this investigation which is either material to Mr. Hankton's guilt, or to the credibility of Pratt or Hassan Williams.

In its ruling on Mr. Hankton's motion for new trial, the court found the Government's disclosure of selected FBI records pertaining to Pratt satisfied its obligations under *Brady* and found Mr. Hankton's "desire for the government's entire case to unravel on a speculative conspiracy theory involving Pratt's crooked conduct is farfetched conjecture." R. Doc. 1652, pp. 31-32. Whether this is a correct assessment requires the Government to disclose its file pertaining to Pratt.

2. The Government's entire file as it relates to Michael Anderson.

Michael Anderson testified that he sold drugs for Mr. Hankton in 2006 and

had personal knowledge of an underlying feud between Mr. Hankton and Brian Broussard. It is undisputed that Anderson encouraged a woman he met in jail to lie about having purchased drugs from Mr. Hankton, and that in 2007 Anderson attempted to frame Mr. Hankton for a series of murders he had not committed.

Three days prior to trial, the Government disclosed a single 302 from 2007, despite Special Agent Burriss informing the grand jury that he had interviewed Anderson multiple times. On June 16, 2016, defense counsel sought production of any other 302s or notes memorializing the multiple interviews conducted of Anderson. R. Doc. 1552. In an order issued the following day, the district court found it was unclear whether any such material exists, but "reminds the government of its obligation to turn over any and all relevant Jencks material in this case and orders it to do so immediately." R. Doc. 1558, p. 8.

Again, it is impossible to determine whether the Government complied with this order without the Government producing its entire file pertaining to Michael Anderson.

3. The Government's entire file as it relates to Rodney Robinson and Brian Broussard.

The Government asserted throughout the trial that the case began with a feud between Mr. Hankton and Rodney Robinson and Brian Broussard. In its opening statement, the Government alleged that Mr. Robinson and Mr. Broussard were two of "the victims you are going to hear about in this case" while displaying their photos

for the jury.

After Mr. Hankton's convictions, trial counsel met with Mr. Robinson who claimed he met with federal agents on two occasions and consistently stated that neither he, nor Brian Broussard, had issues with Mr. Hankton. R. Doc. 1636-4. However, no memoranda or 302s of these meetings were provided to counsel in advance of trial. In response to the motion to compel discovery, the Government claimed that since Mr. Robinson refused to speak with agents, the interviews were so brief that no reports or *Brady* material were generated. This is contrary to Mr. Robinson's post-trial statement, in which he claimed to have spoken with agents on two occasions, told agents that he thought of Mr. Hankton as a brother, and that he (Mr. Robinson) would not testify falsely at Mr. Hankton's trial. There should clearly be some memorialization of these interviews within the Government's file and if the Government failed to produce this prior to trial, it would have violated its obligations under *Brady.*

Mr. Broussard passed away in 2010, prior to the indictment and it is unknown whether federal agents interviewed him before his death. If Mr. Broussard had given similar statements to agents that he had no issues with Mr. Hankton and that he was shot by someone who was clearly not Mr. Hankton, then the Government's failure to produce this evidence prior to trial would have similarly violated its obligation to disclose material evidence in advance of trial.

4.  <u>Additional exculpatory or impeachment evidence pertaining to cooperating witnesses.</u>

Mr. Hankton further renews his request for production of any material in the Government's possession, obtained prior to his conviction, which was not disclosed in advance of trial and which concerns  the credibility of any of the incarcerated witnesses who testified in exchange for a benefit, including but not limited to: Bobby Basquine, Travis Bradley, Demond Butler, Anthony Comadore, Jerod Fedison, Tilicus Irvin, Gerard Howard, Issac Skinner, Aaron Smith, Washington MacCaskill, and Deryl Nicholas.

WHEREFORE, Mr. Hankton prays that this Court grant this motion and order the United States Attorney to produce relevant portions of its file to undersigned counsel for review.

Respectfully submitted,

*/s/Jane Hogan*
Jane Hogan, La. Bar Roll No. 35172
HOGAN ATTORNEYS
310 N. Cherry Street
Hammond, LA 70401
985-542-7730
jane@hoganattorneys.com

## CERTIFICATE OF SERVICE

This certifies that I have electronically filed the foregoing pleading with the Clerk of Court by using the CM/ECF system, which will send notice of electronic

10

filing to all counsel of record.

Dated:  January 26, 2024.

_/s/Jane Hogan_____
Jane Hogan, La. Bar Roll No. 35172